## DECLARATION OF SPECIAL AGENT JEFF HARTSOCK

Under 28 U.S.C. § 1746, I, Jeffrey G. Hartsock, Special Agent with the U.S. Drug Enforcement Administration ("DEA"), Houston, Texas, make the following unsworn declaration, under the penalty of perjury:

### I. Introduction

1. This declaration is made in support of a Verified Civil Complaint for forfeiture of property seized pursuant to an ongoing investigation involving multiple local, state, and federal agencies into an international drug-trafficking organization. I have a reasonable belief that the property constituted the proceeds of drug trafficking, in violation of 21 U.S.C. §§ 841 (drug trafficking), 846 (drug conspiracy), and 953(a) (exportation of controlled substances), or was involved in or facilitated these violations, and is therefore subject to forfeiture under 21 U.S.C. § 881.

2. The facts pertaining to this investigation are based on my own personal knowledge and information received from other individuals and law enforcement personnel, which I believe to be true.

### II. Declarant's Background and Experience

3. I am a DEA Special Agent, and I am currently assigned to the Houston Field Office, Homeland Security Investigation Task Force (formerly Organized Crime Drug Enforcement Task Force) and have been employed with DEA since June 2003. I have received 16 weeks of instructions from the DEA Academy in Quantico, VA. I received instruction on legal matters related Title 21 of the United States Code, as well as techniques to conduct drug and financial investigations. I have participated in

numerous drug and financial complex conspiracy investigations which led to multiple defendant arrests, drug and money seizures as well as the seizure of high valued assets. I am aware of the methods of operations and techniques drug traffickers utilize to further their drug trafficking organizations. I have exploited many different investigative techniques to uncover the activities of these drug trafficking organizations domestically and internationally to include: physical surveillance, undercover techniques, cultivation and management of confidential informants, electronic surveillance such as pen register trap and trace device, pole cameras, electronic tracking devices and interception of wire communications. I have employed each of these techniques for the investigation, arrest and prosecution of members of such drug trafficking organizations.

## III.    **Property to be Forfeited**

4.    The property sought for forfeiture through these forfeiture proceedings include the following:

| Asset ID | Asset Description |
|---|---|
| 20-DEA-668380 | $20,000.00 U.S. Currency, seized September 9, 2020, by Mark Koss, at the Romanian National Police Headquarters, in Bucharest, Romania |
| 20-DEA-668319 | $681,162.00 U.S. Currency, seized September 14, 2020, from a Bank of America Account held by Wen Hui Cui and Murray Micheal Matthews |
| 20-DEA-671801 | $130,000.00 U.S. Currency, seized September 18, 2020, by the Romanian National Police, from Marius Lazar, in Pitesti, Romania |
| 21-DEA-672495 | €3,600.00 Euros seized November 18, 2020, by the Romanian National Police pursuant to a search warrant executed at the Hell Angels Clubhouse located in Voluntari, Romania, owned by Marius Lazar |
| 21-DEA-672498 | €42,150.00 Euros seized November 18, 2020, by the Romanian National Police pursuant to a search warrant executed at the Hell Angels Clubhouse located in Voluntari, Romania, owned by Marius Lazar |

## IV.    Facts and Circumstances

5.     The DEA began an investigation into an international drug-trafficking conspiracy on May 31, 2020, using an undercover (UC) DEA Special Agent, who posed as an international cocaine trafficker operating out of the United States.  The UC negotiated with members of the conspiracy—Wen Hui Cui (Cui), Murray Michael Matthews (Matthews), Marc Patrick Johnson (Johnson), and Marius Lazar (Lazar)—to sell them cocaine.  Cui, Matthews, Johnson, and Lazar agreed to purchase 400 kilograms of cocaine from the UC, and to pay for the entire amount up front.  Cui, Matthews, and Johnson agreed to wire transfer the payment to a DEA UC Bank of America account in Beaumont, Texas.

6.     In July, August, and September 2020, the suspects wired a total of $681,162.00 U.S. Currency into the DEA UC account.  Two  of the wires originated from Shelyan Trading Corporation Limited using Wing Lung Bank Limited, one originated from Han Li Limited using Standard Chartered Bank Limited, and one originated from Starpride Trading Limited FLA.  On September 14, 2020, DEA agents withdrew all the funds sent by the conspirators from the DEA UC Bank of America account via cashier's check #1246111573 in the amount of $681,162.00 U.S. Currency. On September 15, 2020, DEA agents turned the cashier's check over to the U.S. Marshals Service for safekeeping, in accordance with federal policy.  The database that tracks property sought for forfeiture assigned the currency with asset identification number 20-DEA-668319.

7.     On July 23, 2020, Matthews introduced Lazar—a member of the Romanian

Hells Angels chapter—to the UC agent.   From July 23 through 24, 2020, Lazar negotiated with the UC to purchase 10 kilograms of cocaine to be delivered to Romania after transmitted through the United States.  Lazar also hired to the UC to have one of the UC's fictitious Cartel employees murder two members of a rival outlaw motorcycle club.  Lazar agreed to pay $200,000 for the cocaine, to be paid up front.

8.      On September 9, 2020, Lazar met with and gave $20,000 to a UC officer with the Romanian National Police as partial payment to the UC agent for the cocaine. The UC officer turned the currency over to DEA Special Agent Mark Koss at the Romanian National Police Headquarters in Bucharest, and on September 15, 2020, DEA agents turned the currency over to the U.S. Marshals Service.  This currency was assigned asset identification number 20-DEA-668380.

9.      On September 18, 2020, an undercover Romanian National Police Officer met with Lazar in Pitesti, Romania, where Lazar supplied the undercover officer with $130,000 as partial payment for the 10 kilograms of cocaine.  The currency was turned over to DEA Special Agent Mark Koss, who sealed it in a DEA evidence bag.  The currency was subsequently turned over to the U.S. Marshals Service for safekeeping and assigned asset identification number 20-DEA-671801.

10.     On November 18, 2020, the Romanian National Police executed a lawful search warrant at the Hell Angels Clubhouse located in Voluntari, Romania, which is owned by Lazar.  During the search, the Romanian National Police seized $3,600.00 Euros (21-DEA-672495) and $42,150.00 Euros (21-DEA-672495), the latter representing the last installment payment for the previously negotiated 10 kilograms of cocaine that

Lazar was purchasing from the undercover SA.  DEA agents took custody of the Euros from the Romanian National Police and, after an official count, obtained cashier's checks representing the currency and placed them in the custody of the U.S. Marshals Service.

11.    Agents have been unable to find a connection between Cui, Matthews, Johnson, or Lazar and Golden Jordan Media Productions, Shelyan Trading Corporation Limited, Han Li Limited, and Starpride Trading Limited FLA.  Furthermore, a search for Golden Jordan Media Productions and Shelyan Trading Corporation Limited produced no results.  It is believed these are not real companies.

12.    Neither Cui, Matthews, Johnson, nor Lazar ever made any inquiries or attempted to make a claim for the defendant properties.  All four suspects are foreign nationals, and therefore, their respective wages and earnings could not be ascertained.

13.    On September 17, 2020, a federal grand jury indicted Matthews, Cui, Lazar, and Johnson on two counts: 21 U.S.C. § 963 (conspiracy to import and export cocaine) and 18 U.S.C. § 1956(h) (conspiracy to commit money laundering).  *United States v. Matthews, et al.*, 1:20-cr-78.  On November 4, 2020, a federal grand jury issued a First Superseding Indictment, which alleged violations of 18 U.S.C. § 1962(d) (racketeering conspiracy) and 21 U.S.C. § 963 (conspiracy to import and export cocaine) and 18 U.S.C. § 1956(h) (conspiracy to commit money laundering).

14.    Matthews is currently in custody in Spain pending his extradition.  Once Matthews has exhausted his judicial appeals process he will be extradited to the United States.  Cui is deceased; the indictment against him was dismissed.  A jury found Lazar

guilty on all three counts in the First Superseding Indictment, and, Lazar was sentenced to 300 months on Counts 1 and 2 and 240 months on Count 3, to be run concurrently. Lazar has exhausted his appeals process unsuccessfully. Johnson remains a fugitive.

## V.   Conclusion

15.    In conclusion, the other investigating agents and I found that probable cause exists that the Defendant Property facilitated, was involved in, or constitutes the proceeds of violations of 21 U.S.C. §§ 841 (drug trafficking), 846 (drug conspiracy), and 953(a) (exportation of controlled substances). This determination was made on the facts and circumstances presented above.

16.    As required by required by Rule G(2)(t) of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions, I have a reasonable belief that the government will be able to meet its burden of proof at trial that the Defendant Property described herein, was intended to facilitate or used to further a drug crime or is directly related to drug proceeds of Matthews, Cui, Lazar, and Johnson, in violation of 21 U.S.C. §§ 841 (drug trafficking) and 846 (drug conspiracy) and is therefore subject to forfeiture to the United States of America under 21 U.S.C. § 881.

I declare, pursuant to 28 U.S.C. § 1746, that the foregoing is true and accurate to the best of my knowledge and belief.

Executed this 10th day of July 2026

Jeffrey G. Hartsock
DEA Special Agent